**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NARGUESS NOOHI, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HERSHEY COMPANY,<br><br>Defendant. | ) | Case No. 1:26-cv-00460-JFS<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS


I. INTRODUCTION 1

II. STATEMENT OF FACTS 1

III. LEGAL STANDARD 2

IV. ARGUMENT 3

A. DEFENDANT'S FACTUAL ARGUMENTS ARE INAPPROPRIATE FOR A MOTION TO DISMISS 3

B. PLAINTIFF HAS STANDING TO BRING CLAIMS FOR ALL PRODUCTS LISTED IN THE COMPLAINT 11

C. PLAINTIFF'S PUNITIVE DAMAGES CLAIMS SHOULD NOT BE STRICKEN 13

D. PLAINTIFF HAS STANDING TO FOR INJUNCTIVE RELIEF 14

E. PLAINTIFF'S NATIONWIDE CLAIMS SHOULD NOT BE STRICKEN 16

V. CONCLUSION 17

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) ........................................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)........................................................2

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) ................................................3

*Boone v. PepsiCo, Inc.*, 653 F. Supp. 3d 635 (E.D. Mo. 2023)................................8

*Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531 (9th Cir. 2016) ................6

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ................12

Cabral v. Supple, LLC, 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012) ....15

Cabrega v. Campbell Soup Co., 2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) .11

Campion v. Old Republic Home Prot. Co., Inc., 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) ........................................................................................16

Castagnola v. Hewlett-Packard Co., 2012 WL 2159385, *5 (N.D. Cal. June 13, 2012).........................................................................................16

*Dotson v. Post Holdings, Inc.*, No. 2:25-cv-11993-MWC-DSR, slip op. at 6–7 (C.D. Cal. Apr. 21, 2026).....................................................................4

*Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386 (W.D. Ark. June 25, 2015) ..6

Harris v. Las Vegas Sands L.L.C., 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013).........................................................................................15

Henderson v. Gruma Corp., 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011)..14

*Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043 (S.D. Cal. 2019) ........................8

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889 (N.D. Cal. 2012) ......................5

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (N.D. Cal. 2012). ..............5

Kelly v. Beliv LLC, 640 F. Supp. 3d 286 (S.D.N.Y. 2022) ..................................11

Koehler v. Litehouse, Inc., 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)...15

Kubilius v. Barilla Am., Inc., 2019 WL 2861886 (N.D. Ill. July 2, 2019)............11

Larsen v. Trader Joe's Co., 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012)...15
*Mason v. Reed's Inc.*, 515 F. Supp. 3d 135 (S.D.N.Y. 2021)....................................6
*Medrazo v. Honda of North Hollywood,* 82 Cal.Rptr.3d 1 (2008)..........................12
*N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).................................3
Nelsen v. King County, 895 F.2d 1248, 1252 (9th Cir. 1990)................................16
*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)........3, 14
*Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal.App.4th 638 (2008)................3
*Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal.App.4th 638, 645 (2008)........3
Quiroz v. Beaverton Foods, Inc., 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)..11
*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)................12
Silva v. Smucker Nat. Foods, Inc.,
2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015)......................................................11
Simeone v. T. Marzetti Co., 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023)..........11
*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)...............................12
*Von Koenig v. Snapple Beverage Corp*., 713 F.Supp.2d 1066 (E.D. Cal. 2010)....12
*Williams v. Gerber Products Co*., 552 F.3d 934 (9th Cir. 2008)..........................3, 4
*Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008)..................3, 4

# I. INTRODUCTION

Defendant labels its Pirate's Booty products with objectively false claims that they contain "no artificial preservatives" (the "Products"). Yet, the Products contain the artificial chemical preservatives citric acid and lactic acid. *See* Plaintiff's First Amend. Compl. at ¶ 11-21 (the "FAC"). Consumers use consumer product labeling to make determinations about what foods they purchase. Yet, Defendant's mislabeling deprives those consumers of the right to choose what they consume and buy. Plaintiff alleges that she was misled by Defendant's "no artificial preservatives" labeling in violation of the False Advertising Law ("FAL") (Cal. Business & Professions Code §§ 17500 *et seq*., Unfair Competition Law ("UCL") (Cal. Business & Professions Code §§ 17200 *et seq,* and Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq*.). Plaintiff further alleges that she sought to avoid the negative effects of consuming preservatives, but has been deprived of that benefit due to Defendant's mislabeling. FAC ⁋ 34.

# II. FACTUAL BACKGROUND

This case is brought on behalf of purchasers of the Products in the United States between April 21, 2021, and the present. FAC ¶ 46. Plaintiff also brings a subclass of all persons who purchased the Products in California. *Id.* ¶ 47. Plaintiff alleges that at least three products are mislabeled as having "no artificial

preservatives" because the products contain the citric acid and lactic acid. *Id.* ¶ 10. The citric acid and lactic acid in the Products retards the deterioration of the Products. *Id.* ¶ 11-21. Plaintiff alleges that she paid money to Defendant to receive Products without preservatives. *Id.* at ¶ 33-45. Plaintiff also alleges that she would not have purchased Defendant's Product in lieu of other similarly situated Products but for Defendant's mislabeling. *Id*. Plaintiff alleges that she expected to receive the benefit of avoiding the negative potential effects of consuming preservatives, but has been deprived of that benefit because Defendant's Products contain citric acid and lactic acid. *Id*. As such, Plaintiffs and class members lost money since they did not receive Products that are free from artificial preservatives. *Id*. Plaintiff alleges that Defendant's mislabeling affected similarly situated consumers who she seeks to represent. *Id.* at ¶48-70. Plaintiff alleges that Defendant's misrepresentations were uniform. *Id*. Plaintiff alleges that common issues predominate and class treatment is superior to individual prosecution of the class members claims. *Id*.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic v.*

*Twombly*, 550 U.S. 544, 570 (2007). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). To meet the pleading standard for fraud claims under the UCL, CLRA, FAL, and other consumer fraud statutes in the Ninth Circuit, a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008). The challenged conduct "is judged by the effect it would have on a reasonable consumer." *Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal.App.4th 638, 645 (2008). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings." *Williams*, 552 F.3d at 938–39

## IV. ARGUMENT

### A. DEFENDANT'S FACTUAL ARGUMENTS AR INAPPROPRIATE FOR A MOTION TO DISMISS

#### *i. Plaintiff plausibly alleged that a reasonable consumer would be misled by Defendant's mislabeling*

Defendant argued that Plaintiff's proffered definition of "artificial" is implausible, because Plaintiff failed to define other terms such as "manufactured" or "synthetic". First, The key phrase at issue in this case is "No Artificial

Preservatives". FAC ⁋ 10. Plaintiff described her understanding of the Product label in common parlance and using dictionary definitions. FAC ⁋ 25-28. The other terms used are common parlance and can be interpreted as they are used in common parlance. As Plaintiff has alleged, a reasonable consumer, understanding that the Products are labeled as containing "No Artificial Preservatives" would believe the Products do not contain ingredients that were created by people and have the capacity to prevent spoilage. FAC ⁋ 25-28. That is not a fanciful interpretation of what "No Artificial Preservatives" means and provides this Court with a reasonable basis to infer that "members of the public are likely to be deceived." *See Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008). A district court recently rejected nearly identical arguments. *See Dotson v. Post Holdings, Inc.*, No. 2:25-cv-11993-MWC-DSR, slip op. at 6–7 (C.D. Cal. Apr. 21, 2026). The *Dotson* court held that the plaintiff consistently relied on ordinary dictionary definitions and plausibly alleged that reasonable consumers understand "artificial" according to its common meaning. *Id.* The *Dotson* court also rejected Defendant's argument that no reasonable consumer could interpret the label as Plaintiff alleged. *Id.* at 7. In distinguishing *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), the *Dotson* court emphasized that,

unlike in *Moore*, there were no contextual disclosures dispelling the allegedly deceptive meaning of the phrase "no artificial preservatives." *Id.* at 7–8.

Second, Plaintiff explained the Production methods such that this Honorable court may draw the reasonable inference that Defendant is liable for mislabeling the Products as containing "No Artificial preservatives". Plaintiff's FAC ⁋ 11-21. Whether or not those production methods render the Product's labeling misleading is an issue of fact. *See Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (N.D. Cal. 2012). Plaintiff also provided two warning letters from the FDA specifying that the inclusion of citric acid rendered "natural" labeling misleading and should be designated as a preservative in labeling. FAC ⁋ 13-15. As a result, Plaintiffs have adequately alleged that reasonable consumer would be misled by Defendant's labeling.

*ii. Plaintiffs Adequately Allege the Challenged Ingredients are Artificial*

Defendant argues Plaintiff failed to allege that lactic acid and citric acid in the Products are artificial because Plaintiff failed to allege the artificial synthesis of citric acid and lactic acid in the complaint are the only production methods for those ingredients. Yet, Plaintiffs expressly pled the citric acid and lactic acid in the Products is an artificial preservative. FAC ¶11, 18. Plaintiff further alleged that Defendant uses "artificial citric acid in the Products" and this type of citric

acid "is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*." *Id.* at 11-12. Furthermore, chemical solvents are used to extract citric acid and remain in the manufactured citric acid. *Id*. Several courts have found it plausible that citric acid produced from *Aspergillus niger* fermentation is an artificial ingredient. *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533 (9th Cir. 2016) (reversing a grant of summary judgment and holding that evidence could "allow a trier of fact to find that the synthetic citric and ascorbic acids in Dole's products were not 'natural.'"); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (noting that FDA warning letters "suggest that citric acid, as produced by *Aspergillus Niger*, makes an 'All-Natural' label misleading."); *Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386, at *4 (W.D. Ark. June 25, 2015) (accepting as true the plaintiff's allegations "that the products contain *artificially* derived citric acid or calcium chloride, in contravention of federal regulations.").

Likewise, Plaintiff alleged that the lactic acid in the Products was subject to a spontaneous synthetic acid-base reaction between calcium carbonate and the lactic acid produced by genetically engineered bacteria. *Id* at ⁋18-19. That spontaneous synthetic acid-base reaction creates calcium lactate. *Id.* The calcium lactate is then subject to another synthetic reaction with sulfuric acid to produce

lactic acid and calcium sulfate. *Id.* Additionally, the calcium lactate and ammonium lactate processes described in the sources Plaintiff referenced involve the same acid/base synthesis that renders the lactic acid in the Products synthetic irrespective if it is made from the fermentation process or those processes. See A.O. Ojo & O. de Smidt, *Processes*, 11, 688 (2023). As Plaintiff alleged, all manufactured lactic acid is artificial and Defendant's Products contain manufactured lactic acid. FAC ⁋ 18-20. Therefore, this Court should follow the other District Courts from across circuits that have held that the explicit allegations as made by Plaintiff in the FAC are sufficient to satisfy pleading standards. See *Hayes v. Kraft Heinz Co.,* No. 1:23-CV-16596, 2024 WL 4766319, at *4 (N.D. Ill. Nov. 13, 2024) (holding that nearly identical allegations that products contained artificial citric acid were sufficiently plausible because they tied industry practices to the ingredients in the Products).[1] Moreover, several courts have found that whether a particular ingredient is natural or artificial is a question of fact. *See, e.g., Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 546 (W.D.N.Y. 2018); *Boone v. PepsiCo, Inc.*, 653 F. Supp. 3d 635, 646 (E.D.

---

[1] *Noohi v. Kraft Heinz Co.,* No. CV 19-10658 DSF (SKx), at *6 (C.D. Cal. July 20, 2020); *Marotto v. Kellogg Co., No. 18 CIV. 3545 (AKH), 2018 WL 10667923, at *7 (S.D.N.Y. Nov. 29, 2018*; *Allred v. Kellogg Co., No. 17-CV-1354-AJB-BLM, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018)*.

Mo. 2023); *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019).

*ii. Plaintiffs Adequately Allege the Challenged Ingredients are Preservatives or Function as Preservatives*

Next, Defendant argues Plaintiffs failed to show that lactic acid and citric acid function as preservatives in the Products because both ingredients have other uses and are identified on the ingredients list as flavors. As a threshold observation, function of an ingredient in a product is not determinative of the effects of an ingredient on consumers after they consume it. If a hypothetical product was labeled, "No Poisons", but contained strychnine, known as rat poison, the "No Poisons" label would not be accurate simply because strychnine can be used as a stimulant. Even if the strychnine truly functioned as a stimulant in the hypothetical product, it would still be a poison, because it is categorically a poison. Similarly, consumers who seek products that do not contain poison, seek to avoid the consumption of poisons irrespective of what the poison's other functions might be. As noted above and further detailed below, Plaintiff alleges citric acid and lactic acid are chemical preservatives or functions as preservatives in the Products. FAC ¶¶ 14, 20. Plaintiff also alleged that she expected to avoid

the potential negative effects of consuming preservatives when she purchased and consumed the Products. *Id.* at 34, 43.

First, the Food and Drug Administration defines chemical preservatives as: "any chemical that, when added to food, *tends to* prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22 (emphasis added). The term "tend" is defined in common parlance as to be likely to behave in a particular way or have a particular characteristic.[2] 21 C.F.R. § 101.22 does not define chemical preservatives based on the intended function of those chemicals, rather it defines chemical preservatives based on the likelihood that those chemicals will display characteristics that retard the deterioration of food. *See* 21 C.F.R. § 101.22.

Here, citric acid and lactic acid extend the shelf-life of the Products by creating an environment inhospitable to bacteria growth. FAC ¶ 11-21. Plaintiff also included multiple sources referring to citric acid and lactic acid as preservatives in a variety of contexts. *Id.* The chemical structure of citric acid and

---

[2] Cambridge Dictionary, Definition of Tend, https://dictionary.cambridge.org/us/dictionary/english/tend

lactic acid dictate that they have bacterio-static effects on their environment, as a result citric acid and lactic acid are chemical preservatives in the Products because they tend to retard the deterioration of food. *Id.* Even if citric acid and lactic acid have other uses, such as flavor, they still have preservative effects. Likewise, even though, citric acid and lactic acid are labeled as "for flavor" on the Products' ingredients lists they have same chemical properties. *Id.* Plaintiff and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming preservatives. *Id.* ¶34. Beyond that, Plaintiff provided a source supporting her explicit allegation that citric acid and lactic acid are preservatives. FAC ¶ 16, 17, 20. See *Hayes v. Kraft Heinz Co.,* No. 1:23-CV-16596, 2024 WL 4766319, at *4 (N.D. Ill. Nov. 13, 2024) (where functionally identical allegations about citric acid's function as a preservative in a macaroni and cheese product were held to be "enough to withstand a motion to dismiss."). Furthermore, Defendant's reliance on Hu is flawed. The plaintiffs in Hu failed to plead a factual basis for the challenged ingredients to function as preservatives in the challenged products. *See Hu v. Herr Foods, Inc.* 251 F. Supp. 3d 813 (E.D. Pa. 2017). Meanwhile, Plaintiff here plead a detailed factual basis regarding how citric acid and lactic acid function as preservatives specifically. FAC ¶ 16, 17, 20. For these reasons, Courts have declined to follow Hu. *See Simeone v. T. Marzetti*

*Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023); *Cabrega v. Campbell Soup Co.*, 2019 WL 13215191, at *10 (E.D.N.Y. Nov. 18, 2019); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 298 (S.D.N.Y. 2022). This Court should follow the several courts holding that the function of an ingredient in a food product presents a question of fact that cannot be decided on a motion to dismiss. *See*, *e.g.*, *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023).[3]

**B. PLAINTIFF HAS STANDING TO BRING CLAIMS FOR ALL PRODUCTS LISTED IN THE FIRST AMENDED COMPLAINT**

Defendant challenged Plaintiff's statutory standing to assert her claims regarding the Products she did not personally purchase. However, Plaintiff has established her standing to pursue claims for violation of the FAL, UCL, and CLRA against Defendant. FAC. Supra. Determining whether Plaintiff may represent the claims of consumers who purchased Defendant's other Products explicitly requires determining whether common legal or factual questions can be resolved by the Court, whether Plaintiff's claims are typical of the claims of purchasers of the other Products, whether there are enough purchases of other Products to warrant Plaintiff representing a class, and whether Plaintiff can

[3] Quiroz v. Beaverton Foods, Inc., 2019 WL 1473088, at *8 (E.D.N.Y. Mar. 31, 2019); Kubilius v. Barilla Am., Inc., 2019 WL 2861886, at * 4 (N.D. Ill. July 2, 2019)

adequately represent other consumers interests. Cases involving false advertising on a company's standard packaging or otherwise at the point of sale are particularly ripe for application on a broad class wide basis.[4] In these cases, as in the case at bar, there was one singular type of mislabeling that applies in the exact same way to all the falsely advertised products. *See e.g. Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012); *Medrazo v. Honda of North Hollywood,* 82 Cal.Rptr.3d 1 (2008); *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal. 2014). As the 7th Circuit noted in the case of *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014), "[t]he question whether the GSC packaging was likely to mislead a reasonable consumer is common to the claims of every class member." Stated otherwise, where all class members were exposed to the same packaging of products containing the same misleading statements, such a case is ideal for class-wide treatment. The overwhelming majority of district court class certification orders agree that classes may be certified on a broader basis than the product purchased by the plaintiff.[5]

---

[4] *Bruton v. Gerber Products Company*, 961 F.Supp.2d 1062 (N.D.Cal.2013); *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066 (E.D. Cal. 2010); *Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014).

[5] *See Forcellati v. Hyland's, Inc., 2014 WL 1410264 at *10 (C.D. Cal 2014); Werdebaugh v. Blue Diamond Growers, 2014 WL 2191901 at *17 (N.D. Cal 2014 Brazil v. Dole Packaged Foods, LLC, 2014 WL 2466559 at *10 (N.D. Cal 2014);*

In this case, Plaintiff alleged that each and every Product purchased by each and every member of the proposed class was subject to a label on the Product packaging that the Products contained "no artificial preservatives" which is objectively false because the Products contain citric acid and lactic acid. FAC ¶ 11-21. Plaintiff has adequately alleged that as a result of Defendant's conduct she has suffered an injury. FAC ¶45. Plaintiff's allegations must be taken as true at the pleading stage, and Plaintiff alleges that the conduct which happened to her was common across all of the listed Products.

**C. PLAINTIFF'S PUNITIVE DAMAGES CLAIMS SHOULD NOT BE STRICKEN**

Defendant's argument that Plaintiff's punitive damages should be stricken is premature and ignores allegations in the First Amended Complaint. "The CLRA prohibits deception and permits recovery of punitive damages…" *Benson v. S. California Auto Sales, Inc.,* 239 Cal. App. 4th 1198, 1210, 192 (2015). Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations. *All. Mortg. Co. v. Rothwell,* 10 Cal. 4th 1226,

---

*Davidson v. Apple, Inc., 2018 WL 2325426 at *8-9 (N.D. Cal 2018); Lanovaz v. Twinings North America, Inc., 2014 WL 1652338 at *4 (N.D. Cal 2014); Astiana v. Kashi Co., 291 F.R.D. 493, 505 (S.D. Cal. 2013); Todd v. Tempur-Sealy International, Inc., 2016 WL 5746364 at *5 (N.D. Cal. 2016); Lilly v. Jamba Juice Co., 308 F.R.D. 231 (N.D. Cal. 2014); Krommenhock v. Post Foods, LLC, 334 F.R.D. 552, 562 (N.D. Cal. 2020)*

1241, (1995). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Plaintiff's claims for the violation of the CLRA are indicative of fraudulent conduct, and for the purposes of pleading, are sufficient to establish that Plaintiff may seek punitive damages. Plaintiff provided sources that support the inference that citric acid is a well-known preservative and is well documented for its use as a preservative. FAC ⁋ 11-17. Yet, Defendant intentionally labeled its Product with explicitly promises that the Product would contain "No Artificial Preservatives". *Id.* There is a reasonable inference to be drawn at this stage that Defendant intentionally mislabeled the Products. See *Parks,* 51 F.3d at 1484

**D. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF**

In the context of an injunction, Plaintiff must specifically show that there is a threat of a similar injury in the future to establish standing for her claims. *Henderson v. Gruma Corp.,* 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011). Many California federal courts have concluded that plaintiffs have standing to

seek injunctive relief even if they do not intend to purchase the same product again in the future.[6] The Ninth Circuit in Davidson stated unequivocally

> "We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because… the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017). Here, Plaintiff alleged that she regularly visits stores carrying Defendant's products and is likely to be exposed to Defendant's labeling in the future. FAC ¶ 42. Plaintiff explicitly alleged that she may purchase the Products in the future and desires to purchase truly preservative free products, like what the Products are advertised to be. *Id.* ¶ 42-44. By way of contrast, the cases in which courts found a plaintiff to lack standing have been only where the record made clear that there is no plausible set of facts that would entitle the plaintiff to injunctive

---

[6] *See* e.g., *Koehler v. Litehouse, Inc.,* 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012); *Harris v. Las Vegas Sands L.L.C.,* 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013); *Larsen v. Trader Joe's Co.,* 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012); *Cabral v. Supple, LLC,* 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012); *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012).

relief.[7] Plaintiff provided clear allegations establishing imminent threat of harm and could amend to add more allegations of imminent harm if necessary.

**E. DEFENDANT'S ATTEMPTS TO STRIKE PLAINTIFF'S NATIONWIDE CLAIMS IS PREMATURE**

Defendant's argument in support of striking Plaintiffs' claims on behalf of nationwide consumers should be denied, as it prematurely seeks to resolve disputed factual issues about whether a nationwide class may be certified. In rejecting premature efforts to dismiss class allegations, courts have repeatedly recognized that where, as here, the factual issues critical to class certification are disputed, a court may not resolve the merits of plaintiffs' request for certification without the benefit of a developed record. *See generally* 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3. Defendant seeks to prejudice Plaintiff by denying her class discovery necessary for a properly supported motion for class certification, a motion that requires Plaintiff to put forward evidence that the prerequisites of Rule 23 are met. Cognizant of this burden,

[7] See, e.g., *Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990) (describing "an extended chain of highly speculative contingencies, all of which would have to be fulfilled," before finding the threat of future harm to be too small to find standing for injunctive relief); *Castagnola v. Hewlett-Packard Co.,* 2012 WL 2159385, *5 (N.D. Cal. June 13, 2012) (no plausible risk that plaintiff would be tricked again into enrolling into undesired third -- party service when purchasing a desired product); *Campion v. Old Republic Home Prot. Co., Inc.,* 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) (granting summary judgment where plaintiff had testified that he did not intend to purchase product again).

Defendant unfairly attempts to shift its burden to Plaintiff prior to Plaintiff's filing of a motion for class certification, thereby precluding the introduction of extrinsic evidence necessary to satisfy the prerequisites of Rule 23(a) and (b). For these reasons, the Court should decline to dismiss class allegations prior to a motion for class certification. *See supra*.

## V. CONCLUSION

Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with prejudice. In the alternative, Plaintiff requests the Court grant him leave to file a Second Amended Complaint to correct any deficiencies in her First Amended Complaint.

Dated: May 8, 2026

Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, P.C

By: *<u>/s/ Todd M. Friedman</u>*

Todd M. Friedman (SBN 310961))
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com

Attorneys for Plaintiff

## PROOF OF SERVICE

I hereby certify that on May 8, 2026, a true and correct copy of the foregoing brief was served upon counsel of record through the Court's CM/ECF system.

By: /s/ Todd M. Friedman
Todd M. Friedman, Esq.
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word count limitations of Local Rule 7.8(b) and 5.1 because it contains 4916 words and has been prepared in 14 point Times New Roman font in double spacing.

By: /s/ Todd M. Friedman
Todd M. Friedman, Esq.
Attorney for Plaintiff